## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MSC LAND COMPANY, LLC**,
a Michigan limited liability company,

      Plaintiff,

Case No. 2: 23-cv-10183
Hon.

-v-

**DSC LTD.**, a Michigan corporation,
**DETROIT STEEL COMPANY, L.L.C.,**
a Michigan limited liability company,
and **TRENTON LAND HOLDINGS, LLC**,
a Michigan limited liability company,

      Defendants.

_____

*There is no other pending or resolved civil action arising out of the*
*transaction of occurrence alleged in this Complaint.*

*/s/ John Mucha, III*
JOHN MUCHA, III (P40907)

## **COMPLAINT**

NOW COMES, Plaintiff, MSC Land Company, LLC, by and through its

counsel, Dawda, Mann, Mulcahy & Sadler PC, and for its Complaint against DSC

LTD., Detroit Steel Company, L.L.C., and Trenton Land Holdings, LLC, states:

## **PARTIES**

1.    Plaintiff MSC Land Company, LLC ("MSC") is a Michigan limited

liability company with a principal place of business located in Warren, Michigan.

2.     Defendant DSC LTD. is a Michigan corporation with a principal place of business located in Trenton, Michigan.

3.     Defendant Detroit Steel Company, L.L.C. ("Detroit Steel") is a Michigan limited liability company with a principal place of business in Trenton, Michigan.

4.     Trenton Land Holdings, LLC ("Trenton Land") is a Michigan limited liability company with a principal place of business in Trenton, Michigan.

## JURISDICTION

5.     This case arises in part under a federal statute, the Comprehensive Environmental Responsibility, Compensation and Liability Act, 42 U.S.C. § 9601 *et. seq.* ("CERCLA").

6.     This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

7.     This Court has pendent jurisdiction over Plaintiff's state law claims as those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy. 28 U.S.C. § 1367.

8.     The Eastern District of Michigan is the proper venue pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613 because Plaintiff's claims arose within this district and the Site (as defined below) and parties are located within this district.

9.     Written notice of Plaintiff's intent to sue, the basis for this suit, and the relief requested herein was provided to the United States Environmental Protection Agency, State of Michigan (through the Michigan Department of Environment, Great Lakes and Energy), DSC Ltd., Detroit Steel, and Trenton Land pursuant to Mich. Comp. Laws § 324.20135 more than 60 days prior to the filing of this Complaint.

## FACTUAL ALLEGATIONS

10.    This Complaint relates to a 183-acre parcel of real property that lies on the southern portion of the former McLouth Steel Facility located along the Trenton Channel of the Detroit River in Trenton, Michigan (the "Site").

11.    In 1996, McLouth Steel Corp. ("McLouth"), a former owner of a 273-acre parcel of real property bordering the Trenton Channel of the Detroit River in Trenton, Michigan (the "McLouth Steel Facility") which contains the Site, declared bankruptcy.

12.    McLouth's operation of the McLouth Steel Facility resulted in environmental contamination at the McLouth Steel Facility.

13.    On February 25, 1997, as part of McLouth's bankruptcy case, McLouth transferred title to and control of the McLouth Steel Facility—including the Site—to DSC LTD.

3

14.     Upon information and belief, between 1997 and 2017 DSC LTD. permitted its associated entity Detroit Steel Company, LLC ("Detroit Steel") to operate a steel production facility at the McLouth Steel Facility.

15.     Upon information and belief, Detroit Steel applied for interim status under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA") in 1996 and 1997.

16.     In that RCRA application, Detroit Steel stated that it was handling hazardous substances at the McLouth Steel Facility, including K061 emission control dust/sludge from the primary production of steel in electric furnaces and K062 waste from pickling processes.

17.     DSC LTD. did not complete a Baseline Environmental Assessment, pursuant to Mich. Comp. Laws Serv. § 324.20126 and Mich. Comp. Laws Serv. § 324.21323a, of the McLouth Steel Facility within the requisite time of acquiring title to and control of the McLouth Steel Facility and therefore does not have liability protection pursuant to Mich. Comp. Laws Serv. § 324.20126(1)(c) and Mich. Comp. Laws Serv. § 324.20126(2).

18.     On November 4, 1996 DSC LTD. filed a Notification of Hazardous Waste Activity Form for the McLouth Steel Facility with the EPA, wherein it identified itself as a generator of hazardous waste and an owner/operator of a treatment, storage, and disposal facility.

19.     On September 18, 1997, DSC LTD. filed a RCRA and NREPA hazardous waste permit application with the State of Michigan, in that application DSC LTD. identified itself as handling hazardous wastes at the McLouth Steel Facility.

20.     On November 2, 1999, DSC LTD. submitted a RCRA Facility Assessment Report prepared by an outside consultant (the "RCRA Report") for the McLouth Steel Facility to the State of Michigan.

21.     The RCRA Report identified hazardous waste and contamination at the McLouth Steel Facility and recommended that DSC LTD. undertake corrective actions to address the environmental conditions so identified.

22.     DSC LTD. by its submission of the RCRA Report acknowledged that it knew of the presence of hazardous waste and contamination at the McLouth Steel Facility.

23.     Upon information and belief, Detroit Steel did not complete a Baseline Environmental Assessment, pursuant to Mich. Comp. Laws Serv. § 324.20126 and Mich. Comp. Laws Serv. § 324.21323a, of the McLouth Steel Facility within the requisite time of beginning operations at the McLouth Steel Facility and therefore does not have liability protection pursuant to Mich. Comp. Laws Serv. § 324.20126(1)(c) and Mich. Comp. Laws Serv. § 324.20126(2).

24.     Upon information and belief, Detroit Steel operated at least one acid pickling line and the McLouth Steel Facility's wastewater treatment plant on the Site which generated hazardous waste, waste from pickling processes, and led Detroit Steel to handle hazardous substances at the Site.

25.     On December 17, 1999, DSC LTD. entered into a Comprehensive Corrective Action Order and Remedial Consent Order ("CACO") with the Michigan Department of Environmental Quality ("MDEQ", now known as the Michigan Department of Environment, Great Lakes and Energy "EGLE") and the Michigan Attorney General's Office.

26.     The CACO required DSC LTD., and its successors and assigns, which include, but are not limited to, Trenton Land and Detroit Steel, to undertake certain environmental remedial work and corrective action at the McLouth Steel Facility.

27.     DSC LTD. failed to comply with the requirements of the CACO and failed to complete the remedial work and corrective actions required by the CACO.

28.     In the CACO, DSC LTD. admitted that:

   a.  DSC LTD. operated the McLouth Steel Facility;

   b.  the McLouth Steel Facility contained certain contaminants at the time of the CACO;

   c.  there was, had been, or was a potential for a release of contaminants into the environment from the McLouth Steel Facility at the time the DSC LTD entered into the CACO; and

      d. DSC LTD. did not complete an adequate baseline environmental assessment within 45 days of purchasing the McLouth Steel Facility.

29.    The CACO required DSC LTD. to provide a copy of the CACO and give notice of the CACO to any successor in interest to DSC LTD. prior to the transfer of ownership or a lease interest in the McLouth Steel Facility.

30.    Trenton Land and Detroit Steel therefore had actual or constructive notice of the requirements of the CACO.

31.    In 2000, DSC LTD. sold a 76-acre parcel in the northern portion of the McLouth Steel Facility, however, DSC LTD. retained the remaining southern portion of the McLouth Steel Facility comprising approximately 197 acres, which included the buildings associated with steel manufacturing, waste piles, open ponds, and other areas which contained hazardous substances, contaminants, solid waste, hazardous waste, and sludge as those terms are defined by Sections 101(14) and 101(33) of CERCLA; Sections 1004(5), 1004(26A), and 1004(27) of RCRA; Parts 111, 115, 201 of the Michigan Natural Resources and Environmental Protection Act ("NREPA"); and Mich. Admin. Code R 299.9107.

32.    Upon information and belief, sometime on or about June 28, 2002, DSC LTD. transferred all or part of its remaining interest in the McLouth Steel Facility—including the Site—to Trenton Land.

33.     Upon information and belief, Trenton Land continued to permit Detroit Steel to operate at the McLouth Steel Facility, which operations included steel production on the Site.

34.     Upon information and belief, Trenton Land did not complete a Baseline Environmental Assessment, pursuant to Mich. Comp. Laws Serv. § 324.20126 and Mich. Comp. Laws Serv. § 324.21323a, of the McLouth Steel Facility within the requisite time of acquiring the McLouth Steel Facility and therefore does not have liability protection pursuant to Mich. Comp. Laws Serv. § 324.20126(1)(c) and Mich. Comp. Laws Serv. § 324.20126(2).

35.     On March 31, 2017, Wayne County foreclosed on the Site due to Trenton Land's failure to pay taxes on the Site, and thereafter transferred the Site to the Wayne County Land Bank Corporation ("WCLB") for holding.

36.     After foreclosing on the Site, Wayne County solicited bids for the Site and on September 28, 2017, the WCLB, with the approval of Wayne County, entered into a Purchase and Development Agreement with MSC.

37.     Under the Purchase and Development Agreement between MSC and WCLB, MSC voluntarily agreed and completed the performance of certain environmental response efforts, including: an asbestos abatement project and the demolition of the structures located on the Site, including taking the identified structures and buildings on the Site "to grade".

38.     Before MSC acquired title to the Site, MSC, who was not a potentially responsible party pursuant to 42 U.S.C. 9607(a), voluntarily entered into a settlement agreement dated August 7, 2018 with EPA, EGLE, and the U.S. Department of Justice whereby MSC voluntarily agreed to address identified environmental conditions on the Site left by past owners and operators, including Defendants Trenton Land, DSC LTD., and Detroit Steel (the "Settlement Agreement").

39.     In the Settlement Agreement, EPA, EGLE, and the U.S. Department of Justice provided MSC with a covenant not to sue in exchange for MSC's agreement to address environmental conditions at the Site.

40.     EPA never instituted an administrative action or lawsuit against MSC related to the Site.

41.     MSC entered into the Settlement Agreement with EPA on a voluntary basis.

42.     In the Settlement Agreement MSC specifically retained the right to bring a cost recovery action to recover all future necessary costs of response, including, removal and remediation costs incurred at the Site.

43.     By a quit claim deed dated October 30, 2018 and recorded on November 2, 2018, WCLB transferred title to the Site to MSC.

44.     On May 13, 2019, the EPA added the McLouth Steel Facility to the National Priorities List pursuant to 42 U.S.C. 9605(a)(8)(B),

9

45.     Before EPA added the McLouth Steel Facility to the National Priorities List, the EPA determined that the Site was a facility within the meaning of 42 USC § 9601(9) and that there was a release or threat of a release of hazardous substances at the Site.

46.     Consistent with the prior analyses and determinations regarding the Site discussed above, the EPA determined at that time that the McLouth Steel Facility constituted, "an imminent and substantial threat to public health and the environment posed by the release and presence of hazardous substances contained in liquids and sludges in basements, pits, basins, sumps and lagoons within the southern portion of the former McLouth Steel Facility in Trenton, Michigan. These liquids and sludges contain polychlorinated biphenyls (PCBs); heavy metals including arsenic, cadmium, chromium, lead, and mercury; and/or volatile and semi-volatile organic compounds (collectively, contaminants of concern)." Brian Kelly, EPA ENFORCEMENT ACTION MEMORANDUM, dated June 5, 2018, available at: https://semspub.epa.gov/work/05/941247.pdf (last accessed June 3, 2022).

47.     MSC, who was not a potentially responsible party for the contamination at the McLouth Steel Facility pursuant to 42 U.S.C. 9607(a) or Mich. Comp. Laws Serv. § 324.20107a, has completed response and removal activities at the Site, spending more than 100,000 labor hours and in excess of $20,000,000.00 to remove more than 32,000 tons of solids and almost 3 million gallons of liquids from the Site.

48.    The completed response and removal activities have included the following:

   a.   Demolition of approximately 45 structures;

   b.   Removal of asbestos-containing material, containerized wastes, and materials containing polychlorinated biphenyls, or PCBs, from all structures before demolition. Including the removal of 1.3 Million square feet of asbestos containing material ("ACM");

   c.   Installation of a fence around the Site and other institutional controls and safety measures;

   d.   Removal of contaminated water and sludges from 23 subsurface structures - pits, basements, and lagoons - cleaning or removing the structures and, if the structures remained, filling them with clean fill materials;

   e.   Investigation of five areas where PCBs may have been released and related removal of PCB impact

   f.   Assessment of options for stormwater management to eliminate uncontrolled flow to the Trenton Channel of the Detroit River; and

49.    On February 26, 2022, the WCLB issued a letter acknowledging that MSC had completed certain requirements of the Purchase and Development Agreement.

50.    On March 24, 2022, the EPA issued a Notice of Completion of Work acknowledging that MSC had fully performed the response and removal work agreed to in the Settlement Agreement.

51.    MSC was not responsible or liable for any and/or all of the contamination present on the Site. However, MSC has spent in excess of $20 million

Case 2:23-cv-10183-JEL-JJCG   ECF No. 1, PageID.12   Filed 01/24/23   Page 12 of 29


in response costs for addressing and removing environmental contamination at the Site.

52.     DSC LTD., Detroit Steel, and Trenton Land are each responsible parties pursuant to 42 U.S.C. 9607(a) and should be required to compensate MSC for all costs the Plaintiff expended to address environmental conditions that existed at the McLouth Steel Facility when DSC LTD., Detroit Steel, and Trenton Land owned and/or operated at the McLouth Steel Facility.

## COUNT I
## COST RECOVERY PURSUANT TO 42 U.S.C. § 9607
### (DSC LTD.)

53.     MSC incorporates by reference the preceding paragraphs as though full set forth herein.

54.     DSC LTD. is jointly and severally liable with all prior owners of the Site, including, but not limited to, Trenton Land and Detroit Steel for cost recovery to MSC pursuant to CERCLA 42 U.S.C. § 9607 as alleged in the following paragraphs.

55.     DSC LTD. is a "person" pursuant to 42 U.S.C. § 9601(21).

56.     DSC LTD. owned the Site whose conditions did or may have caused a release or threatened release of hazardous substances from or at the Site and was an "owner" pursuant to 42 U.S.C. § 9607(a)(1).

57.    Given the presence of hazardous substances, the Site constitutes a "facility" within the meaning of 42 U.S.C. § 9601(9).

58.    As the former owner of the Site, which constitutes a facility as stated above, DSC LTD. is a potentially responsible party pursuant to 42 U.S.C. § 9607(a)(1) and is strictly liable for the necessary removal costs incurred by Plaintiff outlined above pursuant to 42 U.S.C. § 9607(a).

59.    As the former owner of the Site at a time of the disposal of hazardous substances thereon, DSC LTD. is a potentially responsible party pursuant to 42 U.S.C. § 9607(a)(2) and is strictly liable for the necessary removal costs incurred by Plaintiff outlined above pursuant to 42 U.S.C. § 9607(a).

60.    Upon information and belief, DSC LTD. owned the Site at a time that storage, disposal, release, placement, and/or discharge of hazardous substances including, but not limited to, volatile and semi-volatile organic compounds, PCBs, metals, dioxins, and furans occurred and this constitutes a release or threatened release of hazardous substances and this has resulted in a hazardous condition at the Site, requiring the incurrence of response costs to address the conditions at the Site.

61.    Upon information and belief, DSC LTD. exacerbated environmental conditions at the Site through its acts, inactions, and omissions at the time that it owned the Site.

62.    MSC has incurred response costs to remove certain environmental conditions on the Site including, but not limited to, the costs stated in Paragraph 47 above.

63.    Plaintiff will incur necessary response costs for the future removal and future remediation of the environmental conditions at the Site consistent with the National Contingency Plan.

64.    The incurrence of the removal costs and response costs described in Paragraph 47 above was necessary to implement a removal action approved by EPA and EGLE.

65.    The incurrence of the removal costs and response costs described above is consistent with the purposes and intent of the National Contingency Plan as set forth in 40 C.F.R., Part 300. The removal costs and response costs were and will be reasonable and necessary for the protection of human health, safety, and the environment.

66.    The costs that Plaintiff has incurred are costs for "removal" pursuant to 42 U.S.C. § 9601(23) and such costs are costs of "response" pursuant to 42 U.S.C. § 9601(25).

67.    The removal costs and response costs that Plaintiff will incur include both costs for future "removal" under 42 U.S.C. § 9601(23) and future "remedial action" under 42 U.S.C. § 9601(24).

68.     Under 42 U.S.C. § 9607(a)(1) and (a)(2), DSC LTD. is strictly liable to the Plaintiff for past and future response costs identified above.

69.     DSC LTD. is liable for Plaintiff's actual attorneys' fees and other costs in bringing and prosecuting this action.

WHEREFORE, MSC respectfully requests that this honorable Court:

a. enter a declaratory judgment pursuant to 42 U.S.C. § 9607(g)(2), finding that DSC LTD. is jointly and severally liable with Trenton Land and Detroit Steel to MSC for all past response costs incurred in connection with the Site;

b. enter a judgment against DSC LTD. jointly and severally with Trenton Land and Detroit Steel in the amount of all past response costs incurred by MSC in connection with addressing and removing environmental conditions at the Site together with interest, costs, attorney's fees;

c. enter a judgment holding DSC LTD. jointly and severally liable with Trenton Land and Detroit Steel for all necessary future removal costs and response costs that will be incurred by MSC in connection with addressing, removing, and remediating environmental conditions on the Site together with interest, costs, attorney's fees; and

d. grant MSC all further relief that this Court may deem just and equitable.

15

**COUNT II**
**COST RECOVERY PURSUANT TO 42 U.S.C. § 9607**
**(Detroit Steel)**

70.     MSC incorporates by reference the preceding paragraphs as though full

set forth herein.

71.     Detroit Steel is jointly and severally liable with all prior owners of the

Site, including, but not limited to, Trenton Land and DSC LTD. for cost recovery to

MSC pursuant to CERCLA 42 U.S.C. § 9607 as alleged in the following paragraphs.

72.     Detroit Steel is a "person" pursuant to 42 U.S.C. § 9601(21).

73.     Detroit Steel previously operated at, and generated hazardous waste on,

the Site whose conditions did or may have caused a release or threatened release of

hazardous substances from or at the Site.

74.     Given the presence of hazardous substances, the Site constitutes a

"facility" within the meaning of 42 U.S.C. § 9601(9).

75.     As the former operator of the Site, which constitutes a facility as stated

above, Detroit Steel is a potentially responsible party pursuant to 42 U.S.C. §

9607(a)(1) and is strictly liable for the necessary removal costs incurred by Plaintiff

outlined above pursuant to 42 U.S.C. § 9607(a).

76.     As a former operator at the Site at a time of the disposal of hazardous

substances thereon, Detroit Steel is a potentially responsible party pursuant to 42

U.S.C. § 9607(a)(2) and strictly liable for the necessary removal costs incurred by Plaintiff outlined below pursuant to 42 U.S.C. § 9607(a).

77.     Upon information and belief, Detroit Steel's storage, disposal, release, placement, and/or discharge of hazardous substances including, but not limited to, volatile and semi-volatile organic compounds, PCBs, metals, dioxins, and furans at the Site constitutes a release or threatened release of hazardous substances and resulted in a hazardous condition at the Site, requiring the incurrence of response costs to address the conditions at the Site.

78.     Upon information and belief, Detroit Steel exacerbated environmental conditions at the Site through its acts, inactions, and omissions at the time that it operated at the Site.

79.     MSC has incurred response costs to remove certain environmental conditions on the Site including, but not limited to, the costs stated in Paragraph 47 above.

80.     Plaintiff will incur necessary response costs for the future removal and future remediation of the environmental conditions at the Site consistent with the National Contingency Plan.

81.     The incurrence of the removal costs and response costs described in Paragraph 47 above was necessary to implement a removal action approved by EPA and EGLE.

82.     The costs that Plaintiff has incurred are costs for "removal" pursuant to 42 U.S.C. § 9601(23) and such costs are costs of "response" pursuant to 42 U.S.C. § 9601(25).

83.     The removal costs and response costs that Plaintiff will incur include both costs for future "removal" under 42 U.S.C. § 9601(23) and future "remedial action" under 42 U.S.C. § 9601(24).

84.     The incurrence of the removal costs and response costs described above is consistent with the purposes and intent of the National Contingency Plan as set forth in 40 C.F.R., Part 300. The removal costs and response costs were and will be reasonable and necessary for the protection of human health, safety, and the environment.

85.     Under 42 U.S.C. § 9607(a)(1) and (a)(2), Detroit Steel is strictly liable to the Plaintiff for past and future response costs identified above.

86.     Detroit Steel is liable for Plaintiff's actual attorneys' fees and other costs in bringing and prosecuting this action.

WHEREFORE, MSC respectfully request that this honorable Court:

    a.  enter a declaratory judgment pursuant to 42 U.S.C. § 9607(g)(2), finding that Detroit Steel is jointly and severally liable with Trenton Land and DSC LTD. to MSC for all past response costs incurred in connection with the Site;

18

b. enter a judgment against Detroit Steel jointly and severally with Trenton Land and DSC LTD. in the amount of all past response costs incurred by MSC in connection with addressing and removing environmental conditions at the Site together with interest, costs, attorney's fees;

c. enter a judgment holding Detroit Steel jointly and severally liable with Trenton Land and DSC LTD. for all necessary future removal costs and response costs that will be incurred by MSC in connection with addressing, removing, and remediating environmental conditions on the Site together with interest, costs, attorney's fees; and

d. grant MSC all further relief that this Court may deem just and equitable.

**COUNT III**
**COST RECOVERY PURSUANT TO 42 U.S.C. § 9607**
**(Trenton Land)**

87.    MSC incorporates by reference the preceding paragraphs as though full set forth herein.

88.    Trenton Land is jointly and severally liable with all prior owners of the Site, including, but not limited to, DSC LTD. and Detroit Steel for cost recovery to MSC pursuant to CERCLA 42 U.S.C. § 9607 as alleged in the following paragraphs.

89.     Trenton Land is a "person" pursuant to 42 U.S.C. § 9601(21).

90.     Trenton Land owned the Site whose conditions did or may have caused a release or threatened release of hazardous substances from or at the Site and was an "owner" pursuant to 42 U.S.C. § 9607(a)(1).

91.     Upon information and belief, Trenton Land exacerbated environmental conditions at the Site through its acts, inactions, and omissions at the time that it owned the Site.

92.     Given the presence of hazardous substances, the Site constitutes a "facility" within the meaning of 42 U.S.C. § 9601(9).

93.     As the former owner of the Site, which constitutes a facility as stated above, Trenton Land is a potentially responsible party pursuant to 42 U.S.C. § 9607(a)(1) and is strictly liable for the necessary removal costs incurred by Plaintiff outlined above pursuant to 42 U.S.C. § 9607(a).

94.     As the former owner of the Site at a time of the disposal of hazardous substances thereon, Trenton Land is a potentially responsible party pursuant to 42 U.S.C. § 9607(a)(2) and is strictly liable for the necessary removal costs incurred by Plaintiff outlined above pursuant to 42 U.S.C. § 9607(a).

95.     Upon information and belief, Trenton Land owned the Site at a time that storage, disposal, release, placement, and/or discharge of hazardous substances including, but not limited to, volatile and semi-volatile organic compounds, PCBs,

metals, dioxins, and furans occurred and this constitutes a release or threatened release of hazardous substances and this has resulted in a hazardous condition at the Site, requiring the incurrence of response costs to address the conditions at the Site.

96.     MSC has incurred response costs to remove certain environmental conditions on the Site including, but not limited to, the costs stated in Paragraph 47 above.

97.     Plaintiff will incur necessary response costs for the future removal and future remediation of the environmental conditions at the Site consistent with the National Contingency Plan.

98.     The incurrence of the removal costs and response costs described in Paragraph 47 above was necessary to implement a removal action approved by EPA and EGLE.

99.     The costs that Plaintiff has incurred are costs for "removal" pursuant to 42 U.S.C. § 9601(23) and such costs are costs of "response" pursuant to 42 U.S.C. § 9601(25).

100.    The removal costs and response costs that Plaintiff will incur include both costs for future "removal" under 42 U.S.C. § 9601(23) and future "remedial action" under 42 U.S.C. § 9601(24).

101.    The incurrence of the removal costs and response costs described above is consistent with the purposes and intent of the National Contingency Plan as set

forth in 40 C.F.R., Part 300. The removal costs and response costs were and will be reasonable and necessary for the protection of human health, safety, and the environment.

102.   Under 42 U.S.C. § 9607(a)(1) and (a)(2), Trenton Land is strictly liable to the Plaintiff for past and future response costs identified above.

103.   Trenton Land is liable for Plaintiff's actual attorneys' fees and other costs in bringing and prosecuting this action.

WHEREFORE, MSC respectfully requests that this honorable Court:

a. enter a declaratory judgment pursuant to 42 U.S.C. § 9607(g)(2), finding that Trenton Land is jointly and severally liable with DSC LTD. and Detroit Steel to MSC for all past response costs incurred in connection with the Site;

b. enter a judgment against Trenton Land jointly and severally with DSC LTD. and Detroit Steel in the amount of all past response costs incurred by MSC in connection with addressing and removing environmental conditions at the Site together with interest, costs, attorney's fees;

c. enter a judgment holding Trenton Land jointly and severally liable with DSC LTD. and Detroit Steel for all necessary future removal costs and response costs that will be incurred by MSC in connection with

addressing, removing, and remediating environmental conditions on the Site together with interest, costs, attorney's fees; and

d.  grant MSC all further relief that this Court may deem just and equitable.

## COUNT IV
## <u>COST RECOVERY PURSUANT TO MICH. COMP. LAWS § 324.20126a</u>
## (DSC LTD.)

104.  MSC incorporates by reference the preceding paragraphs as though fully set forth herein.

105.  Written notice of Plaintiff's intent to sue, the basis for this suit, and the relief requested herein was provided to the State of Michigan, DSC Ltd., Detroit Steel, and Trenton Land pursuant to Mich. Comp. Laws § 324.20135 more than 60 days prior to the filing of this Complaint.

106.  The Site is a "facility" pursuant to Mich. Comp. Laws § 324.20101 as it is an area, place, or property where a hazardous substance in excess of the concentrations state in Mich. Comp. Laws § 324.20120a(1)(a) or (17) has been released, deposited, disposed of, or otherwise has come to be located.

107.  DSC LTD. is a liable party for response activity costs at the Site pursuant to Mich. Comp. Laws § 20126.

108.   MSC has incurred and will incur the costs described in Mich. Comp. Laws § 324.20126a(1) with respect to the Site as a result of the presence of hazardous substances on the Site, including but not limited to the costs set forth in this Complaint.

109.   Under Mich. Comp. Law § 324.20126a, DSC LTD. is strictly liable, along with Trenton Land and Detroit Steel for all response costs, plus interest incurred by MSC in conjunction with the selection and implementation of response activities at the Site.

WHEREFORE, MSC respectfully requests that this honorable Court:

a.  enter a declaratory judgment finding that DSC LTD. is jointly and severally liable with Trenton Land and Detroit Steel to MSC for all past and future response costs incurred in connection with the Site;

b.  enter a judgment holding DSC LTD. jointly and severally liable with Trenton Land and Detroit Steel in the amount of all past response costs incurred by MSC in connection with addressing environmental conditions at the Site together with interest, costs, attorney's fees;

c.  enter a judgment holding DSC LTD. jointly and severally liable with Trenton Land and Detroit Steel in the amount of all necessary future response costs that will be incurred by MSC in connection with

addressing, removing, and remediating environmental conditions on
the Site together with interest, costs, attorney's fees; and

d.  grant  MSC  all  further  relief  that  this  Court  may  deem  just  and
equitable.

**COUNT V**
**COST RECOVERY PURSUANT TO MICH. COMP. LAWS § 324.20126a**
**(Detroit Steel)**

110.  MSC incorporates by reference the preceding paragraphs as though
fully set forth herein.

111.  Written notice of Plaintiff's intent to sue, the basis for this suit, and the
relief requested herein was provided to the State of Michigan, DSC Ltd., Detroit
Steel, and Trenton Land pursuant to Mich. Comp. Laws § 324.20135 more than 60
days prior to the filing of this Complaint.

112.  The Site is a "facility" pursuant to Mich. Comp. Laws § 324.20101 as
it is an area, place, or property where a hazardous substance in excess of the
concentrations state in Mich. Comp. Laws § 324.20120a(1)(a) or (17) has been
released, deposited, disposed of, or otherwise has come to be located.

113.  Detroit Steel is a liable party for response activity costs at the Site
pursuant to Mich. Comp. Laws § 20126.

25

114.   MSC has incurred and will continue to incur the costs described in Mich. Comp. Laws § 324.20126a(1) with respect to the Site as a result of the presence of hazardous substances on the Site, including but not limited to the costs set forth in this Complaint.

115.   Under Mich. Comp. Law § 324.20126a, Detroit Steel is strictly liable along with Trenton Land and DSC LTD. for all response costs, plus interest incurred by MSC in conjunction with the selection and implementation of response activities at the Site.

WHEREFORE, MSC respectfully requests that this honorable Court:

a. enter a declaratory judgment finding that Detroit Steel is jointly and severally liable with Trenton Land and DSC LTD. to MSC for all past and future response costs incurred in connection with the Site;

b. enter a judgment holding Detroit Steel jointly and severally liable with Trenton Land and DSC LTD. in the amount of all past response costs incurred by MSC in connection with addressing environmental conditions on the Site together with interest, costs, attorney's fees;

c. enter a judgment holding Detroit Steel jointly and severally liable with Trenton Land and DSC LTD. in the amount of all necessary future response costs that will be incurred by MSC in connection with

addressing, removing, and remediating environmental conditions on

the Site together with interest, costs, attorney's fees; and

d.  grant MSC all further relief that this Court may deem just and

equitable.

## COUNT VI
## COST RECOVERY PURSUANT TO MICH. COMP. LAWS § 324.20126a
### (Trenton Land)

116.   MSC incorporates by reference the preceding paragraphs as though

fully set forth herein.

117.   Written notice of Plaintiff's intent to sue, the basis for this suit, and the

relief requested herein was provided to the State of Michigan, DSC Ltd., Detroit

Steel, and Trenton Land pursuant to Mich. Comp. Laws § 324.20135 more than 60

days prior to the filing of this Complaint.

118.   The Site is a "facility" pursuant to Mich. Comp. Laws § 324.20101 as

it is an area, place, or property where a hazardous substance in excess of the

concentrations state in Mich. Comp. Laws § 324.20120a(1)(a) or (17) has been

released, deposited, disposed of, or otherwise has come to be located.

119.   Trenton Land is a liable party for response activity costs at the Site

pursuant to Mich. Comp. Laws § 20126.

120.   MSC has incurred and will continue to incur the costs described in Mich. Comp. Laws § 324.20126a(1) with respect to the Site as a result of the presence of hazardous substances on the Site, including but not limited to the costs set forth in this Complaint.

121.   Under Mich. Comp. Law § 324.20126a, Trenton Steel is strictly liable along with DSC LTD. and Detroit Steel, for all response costs, plus interest incurred by MSC in conjunction with the selection and implementation of response activities at the Site.

WHEREFORE, MSC respectfully requests that this honorable Court:

a. enter a declaratory judgment finding that Trenton Land is jointly and severally liable with Detroit Steel and DSC LTD. to MSC for all past and future response costs incurred in connection with the Site;

b. enter a judgment holding Trenton Land jointly and severally liable with Detroit Steel and DSC LTD. in the amount of all past response costs incurred by MSC in connection with addressing environmental conditions on the Site together with interest, costs, attorney's fees;

c. enter a judgment holding Trenton Land jointly and severally liable with Detroit Steel and DSC LTD. in the amount of all necessary future response costs that will be incurred by MSC in connection with

28

addressing, removing, and remediating environmental conditions on the Site together with interest, costs, attorney's fees; and

d. grant MSC all further relief that this Court may deem just and equitable.

Respectfully submitted,

DAWDA, MANN, MULCAHY & SADLER PLC

/s/ John Mucha, III
SUSAN J. SADLER (P32516)
JOHN MUCHA, III (P40907)
MICHAEL P. PIGGINS (P81240)
39533 Woodward Avenue, Suite 200
Bloomfield Hills, MI 48304
(248) 642-8685
ssadler@dmms.com
jmucha@dmms.com
mpiggins@dmms.com
Dated: January 24, 2023    Attorneys for Plaintiff